Missouri Pacific Railroad Company *v.* Arkansas Corporation Commission.

4-3522

Opinion delivered June 25, 1934.

*R. E. Wiley,* for appellant.

*McRae & Tompkins, T. E. Wood, Hal L. Norwood,* Attorney General and *Robert F. Smith,* Assistant, for appellee.

Butler, J. Effective June 11, 1932, appellant, the Missouri Pacific Railroad Company and other common carriers of freight, published a reduced rate on certain petroleum oil products, which action was voluntary on their part and to enable rail lines to meet truck competition. This publication did not carry any restrictive routing, the rates applying on all Arkansas lines. The rate expired August 9, 1932, but was republished, effective August 10, 1932, and again, by supplement No. 30, effective May 30, 1933. The only change in the last publication from the former was that the routing was restricted

to certain lines of railway and to certain specifically named points within the 150-mile radius. A protest was filed to the restricted routing in said supplement No. 30, and the Arkansas Corporation Commission issued an order suspending the operation of the supplement and rates and to set the same down for a hearing.

The testimony taken before the commission was to the effect that the rates were voluntary, made to meet truck competition, and that the carriers originating the shipments amended the schedule of rates so as to permit them to designate the routes to which the same should apply; that this was done in order to facilitate the service by lessening the time required for the movement of oil products, and to enable the originating carriers to earn a greater revenue. It was shown that in some instances the earning of the originating carrier over the restricted routing named in supplement No. 30 would be about 50 per cent. of the revenue, whereas, if the routing was unrestricted and was moved over other connecting lines, they would receive not more than 20 per cent. of the revenue. On the hearing the commission canceled the restricted routing, which order was affirmed by the Pulaski Circuit Court on appeal, and from that judgment is this appeal.

It is the contention of the appellant that, since there is no question of reasonable rates involved, the commission could not properly compel the application of reduced rates over any route except that adopted by the carriers. It was and is the contention of the appellee, and that adopted by the commission and the circuit court, that the application of the rate with restricted routing is in violation of § 1 of act of April 8, 1903, which provides as follows: ''That every person, company or corporation operating any railroad in this State which connects with any other railroad in this State and which form a part of a continuous line of railway communication to any point within this State, such companies and corporations, respectively, shall afford all due and reasonable facilities for receiving and forwarding by one of such railroads all the traffic arriving by the other and shall promptly forward the same at through rates, tolls and fares, without

giving any undue preference or advantage to, or in favor of, any particular person or company, or any particular description of traffic, in any respect whatever, so that no obstruction may be offered to the public desirous of using the railroads of this State as continuous lines of carriage from one to another point within this State.''

It is insisted by the appellant that the controversy presented is one between the railway companies in which the public has no interest, and that there is no discrimination as to the public since all shippers are treated alike. It is further argued that the commission has no power to fix and compel a competitive rate such as the one under consideration, but can only compel the application of reasonable rates; that in this instance the rate is voluntary, and no question is being made of its unreasonableness, and that, before the statute relied upon can apply, there must be a specific abridgment contained in it of the common-law rights of the carriers to select such agents as they may see fit for the transportation of freight they had originated beyond their own lines, and that the words of the statute invoked are general in their nature and not sufficient to divest them of their rights at common law. In support of this contention, appellant quotes § 3 of the Interstate Commerce Act and the case of *Southern Pacific Co.* v. *Interstate Commerce Comm.*, 200 U. S. 536, 26 S. Ct. 330, construing the language of the act as not authorizing the commission to order the carriers to desist from a restricted routing applied to through rates. Appellant contends that the language of our statute is no more comprehensive than that of the Interstate Commerce Act, and that the import of the two acts is the same. The Commerce Act forbids the giving of any undue or unreasonable preference or advantage to any particular person * * *, or any particular description of traffic in any respect whatsoever, or to subject any particular person * * *, or any particular description of traffic to any undue or unreasonable prejudice or disadvantage * * *, and afford all reasonable, proper and equal facilities for the interchange of traffic between their respective lines * * *

and shall not discriminate in their rates and charges between such connecting lines. The general meaning of these acts appears somewhat the same, as contended by the appellant, but the language is more specific in our statute, for, among other things, it requires the "forwarding by one of such railroads all the traffic arriving by the other, and shall promptly forward the same at through rates * * * without giving any undue preference or advantage to, or in favor of, any particular person or company, or any particular description of traffic in any respect whatsoever."

The rate fixed for the movement of petroleum products, assented to by the commission, was unrestricted with respect to the lines of railway over which they might be routed. If the initial carriers are permitted by the restricted routing to prevent the freight from being hauled over other lines of railway than those selected by them, then they manifestly give an undue preference in favor of the lines selected and discriminate against those not favored, and deny to the latter the benefit of the through rates given to others which appears to be in direct violation of the statutory mandate. It will be remembered that by supplement No. 30 no competitive rate was fixed. That had already been fixed and approved by the Corporation Commission and was effective over all the lines of railway in the State of Arkansas. Supplement No. 30 nullified to an extent the rates fixed by preventing other lines than those of their own selection to benefit by them.

It is next argued that the statute relied on by the commission as a basis for its order was repealed by act No. 193 of the Acts of 1907. Attention is called to § 17 of that act, which is identical with § 1 of the act of 1903, *supra*, except it does not include the clause, "so that no obstruction may be offered to the public desirous of using the railroads of this State as continuous lines of carriage from one to another point within this State." If the contention of appellant is sound in this particular, we cannot see where it is helped, for that act, with respect to discrimination by any railroad against any of its connect-

ing carriers is identical with the act of 1903, and is the provision which supplement No. 30 violates.

While the public may have no direct interest in the present controversy, it has an important indirect interest. It is manifestly beneficial to the public that the short lines of railroad in Arkansas operate, and any discrimination against them cannot but result in an obstruction to the shippers within the State. By § 3 of the act of 1903, *supra,* it is made the duty of the Railroad Commission (now the Corporation Commission) to make reasonable rates of freight, etc., to be observed by all persons. Section 1 of that act, which has been quoted, prohibits discrimination, and § 4 provides that, where connecting carriers are unable to agree upon a fair and just division of the charges arising from the transportation of freight, etc., the commission shall make the division and fix the *pro rata* charges to be received by said connecting lines. Supplement No. 30 would prevent the application of this statute and permit the initial carrier to in effect make the joint rates and to determine the proportion of revenue it should receive from the traffic haul.

It follows that the judgment of the trial court is correct, and it is therefore affirmed.